**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ROSA GALLEGO-FELICIANO,<br>Plaintiff, | : | |
| | : | |
| | : | |
| v. | : | Civil No.:  5:25-cv-04246-JMG |
| | : | |
| CITY OF LANCASTER, *et al*,<br>Defendants. | : | |
| | : | |

**MEMORANDUM OPINION**

**GALLAGHER, J**                                                    **June 9, 2026**

### I.    INTRODUCTION

Plaintiff, a former employee for the City of Lancaster Police Department, brings this action alleging that Defendants unlawfully terminated her employment in violation of the Family and Medical Leave Act ("FMLA"), the Americans with Disabilities Act ("ADA"), and the Pennsylvania Human Relations Act ("PHRA"). Plaintiff contends that Defendants decided to eliminate her position shortly after learning that her daughter had been diagnosed with a brain tumor and that Plaintiff would need intermittent leave to care for her during surgery and ongoing treatment. Defendants dispute these allegations and maintain that Plaintiff's position was eliminated for legitimate, non-discriminatory reasons unrelated to her request for leave or her association with her disabled daughter.

Defendants have moved for summary judgment on all claims. After reviewing the record, the Court concludes that genuine disputes of material fact exist regarding Defendants' motivations for terminating Plaintiff's employment, including issues of causation, timing, and pretext. These disputes are properly reserved for a jury. Accordingly, and for the reasons set forth below, Defendants' Motion for Summary Judgment will be **DENIED**.

## II.   FACTUAL BACKGROUND

Plaintiff Rosa Gallego-Feliciano ("Plaintiff") is a former Senior Administrative Staff Assistant in the Police Department of City of Lancaster ("Defendant"). *See* Amend. Compl. ¶ 1, 17. Chief of Police Richard Mendez ("Chief Mendez") served as the head of the Police Department during the relevant period. *Id.*

Plaintiff's daughter was diagnosed with a brain tumor in late 2022. *Id.* ¶ 19. Plaintiff informed Chief Mendez of her daughters' condition and advised him that her daughter would require a craniotomy and ongoing medical treatment. *Id.* Plaintiff also told Chief Mendez that she would need intermittent time off from work to care for her daughter during this period. *Id.*

On January 6, 2023, Defendant's third-party FMLA administrator notified Chief Mendez that Plaintiff had submitted a request for intermittent FMLA leave to care for her daughter. Pl.'s Brief. in Opp. to Def.'s Mot. for Summ. J. at 3. Prior to receiving this notice, Defendant had been engaged in discussions regarding potential revisions to Plaintiff's job duties. *Id.* at 6. According to the record, on January 12, 2023, six days after receiving notice of Plaintiff's FMLA request, Chief Mendez decided to discontinue his efforts to revise Plaintiff's duties and instead move forward with eliminating her position. *Id.*

On February 1, 2023, Plaintif's request for intermittent FMLA leave was formally approved. *Id.* at 3. The approval covered medical appointments and treatment for her daughter occurring two to three times per month, lasting one to three days per instance, beginning January 11, 2023, and continuing for a period of twelve months. *Id.*

On February 7, 2023, Defendants informed Plaintiff that her employment was being terminated, effective February 17, 2023. *Id.* Plaintiff subsequently filed this action, alleging that Defendants terminated her employment because she sought leave and because of her association

with her disabled daughter.

### III.  LEGAL STANDARD

Federal Rule of Civil Procedure 56(c) provides that a judge shall "grant summary judgment if there is no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Essentially, the Court must analyze "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251-52. A genuine issue of fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Physicians Healthsource, Inc. v. Cephalon, Inc.*, 954 F.3d 615, 618 (3d Cir. 2020) (quoting *Anderson*, 477 U.S. at 248). At this stage of litigation, all facts presented are viewed in the light most favorable to the nonmoving party, and the moving party "has the initial burden of demonstrating that *no* genuine issue of material fact exists." *Daniels v. City of Pittsburgh*, 2023 WL 2707178, at *2 (3d Cir. Mar. 30, 2023); *Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632, 637 (3d Cir. 1993) (emphasis added).

To survive a properly supported motion for summary judgment, the nonmoving party must present affirmative evidence of specific facts in the record to demonstrate a genuine issue of material fact. *Anderson*, 477 U.S at 256-57; *Berkeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006) (citing *Pa. Prot. & Advocacy, Inc. v. Pa. Dep't of Pub. Welfare,* 402 F.3d 374, 379 (3d Cir.2005)) ("Although the non-moving party receives the benefit of all factual inferences in the court's consideration of a motion for summary judgment, the nonmoving party must point to some evidence in the record that creates a genuine issue of material fact."). It is not enough to "deny the allegations in the moving party's pleadings; instead [Plaintiff] must show where in the record there

3

exists a *genuine* dispute over a material fact." *Doe v. Abington Friends School*, 480 F.3d 252, 256 (3d Cir. 2007) (citations omitted) (emphasis added). In making this showing of a genuine dispute, "the non-movant may not rest on speculation and conjecture..." *Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 666 (3d Cir. 2016). In addition, "conclusory, self-serving affidavits are insufficient to withstand . . . summary judgment." *Gonzalez v. Sec'y of Dept. of Homeland Sec.*, 678 F.3d 254, 263 (3d Cir. 2012). It is not the role of the Court to weigh the evidence provided by the Parties and make a determination as to which facts are true. Rather, the Court is instructed "to determine if there is a genuine issue for trial." *Josey,* 996 F.2d at 637.

## IV.  ANALYSIS

### a.  Plaintiff Timely Filed Her Administrative Charge

Defendants first argue that Plaintiff failed to timely file her administrative charge of discrimination. *See* Def.'s Mot. for Summ. J. at 4. They assert that Plaintiff was notified on February 7, 2023, that her position was being eliminated, yet did not serve her Charge of Discrimination until August 2, 2024, 541 days later. *Id.* at 5. Although Defendant is correct that an aggrieved party must file an EEOC charge within 300 days of the alleged unlawful employment action, Defendants appear to conflate two distinct events: the filing of Plaintiff's administrative charge and the later service of the Complaint. Plaintiff filed her Charge of Discrimination with the EEOC on August 3, 2023. Pl.'s Brief. in Opp. to Def.'s Mot. for Summ. J. at 4. Because this filing occurred within the 300-day period, Plaintiff timely initiated the administrative process.

### b.  Plaintiff's FMLA Claim Will Proceed

Next, Defendants argue that Plaintiff's FMLA claim must be dismissed because there is no evidence that she took FMLA leave before her position was eliminated. Plaintiff responds that Defendants mischaracterize her theory. She does not claim retaliation for leave already taken, but

rather that Defendants acted adversely because Plaintiff was likely to request additional leave for her daughter's serious health conditions in the near future.

To establish a prima facie case of FMLA retaliation, a plaintiff must show that (1) she invoked rights protected by the FMLA, (2) she suffered an adverse employment action, and (3) the adverse action was causally related to the exercise of her FMLA rights. *See Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 508-09 (3d Cir. 2009); *Hanna v. Lincoln Fin. Grp.*, 2020 WL 6445932, at *8 (E.D. Pa. Nov. 3, 2020). Plaintiff and Defendants do not dispute that Plaintiff invoked FMLA rights or that she suffered an adverse employment action. The dispute centers on the third element, causation, and whether Plaintiff has produced evidence from which a reasonable jury could find that her protected activity motivated the termination decision.

Plaintiff identifies several pieces of evidence supporting causation. First, she points to the temporal proximity between her protected activity and the decision to eliminate her position. Pl.'s Brief. in Opp. to Def.'s Mot. for Summ. J. at 5-6. The record reflects that Chief Mendez learned of Plaintiff's FMLA request on January 6, 2023, and that only six days later, he decided to eliminate her position. *Id.* at 5. Such close temporal proximity may, in appropriate circumstances, be "unusually suggestive" of retaliatory motive. Plaintiff also highlights evidence suggesting that the termination decision was not finalized until after she invoked her FMLA rights. *Id.* For example, the 2023 budget was approved without eliminating her position; Chief Mendez continued efforts to revise her position throughout 2022 and into January 2023; Plaintiff remained employed despite earlier restructuring decisions; and only after her FMLA approval did Chief Mendez decide to eliminate her position. *Id.* at 6.

Plaintiff further argues that the record contains sufficient evidence of pretext to defeat summary judgment. Although Defendants assert that Plaintiff lacked sufficient work or

productivity, Plaintiff notes that her termination was not based on performance. *Id.* at 7. Plaintiff contends that Chief Mendez never counseled her regarding any alleged workload deficiencies, never inquired about her daily responsibilities, never referred his concerns to human resources, and never warned Plaintiff that her position was in jeopardy. *Id.* Plaintiff also points to shifting explanations: Defendants initially focused on revising her duties, but only after her FMLA leave was approved did they pivot to eliminating her position entirely. *Id.* She further notes that her termination occurred shortly before her daughter's scheduled craniotomy and anticipated need for additional leave. *Id.* Finally, Plaintiff argues that if budgetary concerns truly motivated the decision, such measures would logically have been taken before the 2023 budget was submitted, not shortly after it was approved. *Id.*

Viewed collectively, this evidence is sufficient to create a genuine dispute of material fact as to whether Plaintiff's protected activity was a motivating factor in the decision to terminate her employment. Because issues of causation and pretext are typically reserved for the jury where, as here, the record contains competing inferences, summary judgment is inappropriate.

### c. Plaintiff's ADA and PHRA Claims Will Proceed[1]

In Counts II and III, Plaintiff asserts claims under the ADA and PHRA. To establish a prima facie case of disability discrimination under the ADA and the PHRA, a plaintiff must establish: (1) she is a disabled person within the meaning of the ADA; (2) she was otherwise

---

[1] Plaintiff brings identical claims under the ADA and the PHRA. These claims are closely related and will therefore be analyzed concurrently. In other words, resolution of Plaintiff's ADA claims will also resolve his PHRA claims. *See e.g. Taylor v. Phoenixville Sch. Dist.,* 184 F.3d 296, 306 (3d Cir. 1999) (citing *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996)) (The "analysis of an ADA claim applies equally to a PHRA claim."); *Hollingsworth v. R. Home Prop. Mgmt., LLC*, 498 F. Supp. 3d 590, 611 (E.D. Pa. 2020) ("The PHRA is basically the same as the ADA in relevant respects and Pennsylvania courts generally interpret the PHRA in accord with its federal counterparts.").

qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) she has suffered an otherwise adverse employment decision as a result of the discrimination." *Garcia v. Vertical Screen*, 592 F. Supp. 3d 409, 419 (E.D. Pa. 2022) (citing *Gaul v. Lucent Tech.*, 134 F.3d 576, 580 (3d Cir. 1998) (addressing the ADA); *Rinehimer v. Cemcolift*, 292 F.3d 375, 382 (3d Cir. 2002).

Defendants argue that Plaintiff's ADA claim must be dismissed because she is not herself disabled. Def.'s Mot. for Summ. J. at 12. Defendants contend that Plaintiff cannot satisfy the first element because she has neither alleged nor demonstrated that she is disabled. Def.'s Mot. for Summ. J. at 12. Plaintiff, however, does not proceed under the traditional disability-based theory. Instead, she invokes the ADA's association provision, which prohibits an employer from "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association". 42 U.S.C. § 12112(b)(4). Under this theory, a plaintiff need not be disabled. Rather, she must show that the adverse action was motivated by her association with a disabled individual.

Defendants argue that Plaintiff has failed to assert facts supporting an associational discrimination claim and that the record contains no evidence indicating that the decision to eliminate her position was motivated by her daughter's disability. Def.'s Mot. for Summ. J. at 13. According to Defendants, Plaintiff's position was eliminated solely due to budget constraints and because Chief Mendez no longer required secretarial support. *Id.* at 14.

Plaintiff disputes this characterization and maintains that her theory is based on Defendants' decision to terminate her because of her association with, and caregiving responsibilities toward, her disabled daughter. Plaintiff contends that the same suspicious timing

and evidence of pretext discussed in connection with her FMLA claim support her ADA claim as well.

According to Plaintiff, Defendants learned that her daughter suffered from a serious medical condition requiring surgery and ongoing caregiving leave. Pl.'s Brief. in Opp. to Def.'s Mot. for Summ. J. at 3, 8. Within days of Plaintiff's FMLA approval, Defendants decided to eliminate her position. *Id.* at 1, 5. Plaintiff argues that a reasonable jury could conclude that Defendants were motivated by her anticipated need to participate in caregiving responsibilities associated with her daughter's disability. *Id.* at 8. Plaintiff further points to the abrupt shift in Defendants' stated rationale, from revising her duties to eliminating her position entirely, and the absence of any performance-based justification, as additional evidence from which a jury could infer discriminatory motive.

Viewing the evidence in the light most favorable to Plaintiff, the Court concludes that she has produced sufficient evidence to create a genuine dispute of material fact as to whether Defendants terminated her because of her association with her disabled daughter. The close temporal proximity, the asserted inconsistencies in Defendants' explanations, and the surrounding circumstances could permit a reasonable jury to find that Plaintiff's caregiving obligations were a motivating factor in the decision to eliminate her position. Summary judgment on Plaintiff's ADA claim is therefore inappropriate.

### d.  The Court Declines to Dismiss Plaintiff's Request for Injunctive Relief

In her Amended Complaint, Plaintiff seeks an "Order enjoining Defendant from engaging in further conduct in violation of employees' rights under the statutes addressed above." Defendants argue that this request must be dismissed because Plaintiff seeks declaratory and injunctive relief based solely on past harm. Def.'s Mot. for Summ. J. at 15-16. Defendants further

contend that, to the extend Plaintiff seeks prospective injunctive relief, her request still fails because she identifies no ongoing or imminent harm, no irreparable injury, and no basis for concluding that monetary damages would be inadequate. *Id.* at 16. Defendants characterize Plaintiff's request as an impermissible demand for an Order simply instructing Defendants not to violate the law. *Id.* at 17.

Plaintiff responds that Defendants' argument is premature. Pl.'s Brief. in Opp. to Def.'s Mot. for Summ. J. at 9. She notes that she seeks, among other remedies, reinstatement to her former position. *Id.* Plaintiff asserts that equitable relief is expressly available under the FMLA and that, should reinstatement be ordered, prospective injunctive relief may be necessary to ensure she is not subjected to further discriminatory or retaliatory conduct. *Id.* Plaintiff therefore contends that dismissal of her request for injunctive relief at this stage is inappropriate. *Id.*

At this stage of the litigation, the Court agrees that Plaintiff's request should not be dismissed. While it is true that declaratory or injunctive relief may not be premised solely on past harm, Plaintiff's claim is not limited to retrospective relief. She seeks reinstatement, a form of prospective equitable relief expressly authorized under the FMLA. If reinstatement were ultimately awarded, the question of whether additional prospective relief is necessary to prevent future violations would become a live and concrete issue. Accordingly, the Court declines to dismiss Plaintiff's request for injunctive relief at this stage. Whether such relief is warranted, and in what form, is an issue more appropriately addressed after liability is determined.

## V.  CONCLUSION

For the reasons set forth above, the Court concludes that genuine disputes of material fact preclude summary judgment on Plaintiff's claims. Plaintiff has produced sufficient evidence from which a reasonable jury could find that her protected activity and her association with her disabled

daughter were motivating factors in the decision to eliminate her position. These issues, particularly those involving intent, causation, and pretext, are properly reserved for the jury.

The Court further declines to dismiss Plaintiff's request for injunctive relief at this stage. Because reinstatement remains a potential remedy, and because the necessity and scope of any prospective equitable relief cannot be determined until liability is resolved, dismissal of that request would be premature. An appropriate Order follows.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge